# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MRO CORPORATION,** | : | |
|          **Plaintiff,** | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 16-2881** |
| | : | |
| **HUMANA, INC.,** | : | |
|          **Defendant.** | : | |

## Memorandum Opinion

**Rufe, J.**                                                                                        **August 23, 2017**

Plaintiff MRO Corporation seeks leave to file a second amended complaint to address issues created by its inadvertent production of a document that calls its claims into question. Defendant Humana, Inc. opposes the motion and has moved for sanctions. For the reasons that follow, Plaintiff's motion for leave to amend will be denied, and the Court will defer ruling on Defendant's motion for sanctions.

### I.  BACKGROUND

#### A.  The Parties' Fee Dispute

This case concerns a long-running fee dispute that has grown increasingly acrimonious. Plaintiff is a Pennsylvania corporation that provides medical records to insurance companies and other healthcare providers upon request, and Defendant is a Kentucky-based health-insurance provider that obtains medical records from Plaintiff.[1] Plaintiff charges fees based on the volume of records produced in response to a request. Plaintiff's fees can be calculated in at least two ways: (1) based on "state rates" set by the state in which the organization requesting records is located; or (2) based on rates set by the Centers for Medicare and Medicaid Services ("CMS

---

[1] For purposes of this decision, Plaintiff's allegations are taken as true, as the background facts are not in dispute.

rates"), which tend to be lower. Plaintiff also frequently requires its clients to pay before any records are produced, a practice known as "pre-bill."

Plaintiff pre-billed Defendant for its services at state rates from 2010 until 2012, when Defendant stopped paying the full amount invoiced by Plaintiff. This led to a series of discussions between October 2012 and January 2013 which allegedly culminated in an agreement whereby Plaintiff would waive its pre-bill requirement so long as Defendant paid state rates going forward.

Defendant abided by this understanding until July 2015, when it began paying Plaintiff the lower CMS rates on some of its invoices. Although Plaintiff complained, Defendant refused to pay state rates on the disputed invoices, and by May 2016, Defendant's outstanding balance had grown to more than $1.5 million. Plaintiff filed suit in state court, and Defendant removed the case to federal court on the basis of diversity jurisdiction.

Plaintiff's original complaint asserted claims for breach of contract and unjust enrichment. The breach-of-contract claim was based on an express oral agreement between Plaintiff and Defendant, although the complaint did not specify when the parties entered into the agreement. After this case was removed to federal court, the Court entered a Scheduling Order and the parties began discovery. At the request of the parties, the Court amended the Scheduling Order on November 22, 2016, to allow Plaintiff to file an amended complaint no later than December 5, 2016.[2] On that date, Plaintiff filed a motion for leave to file an amended complaint that added a claim for promissory estoppel based on Defendant's alleged promise to pay state rates. The Court granted the motion, which Defendant did not oppose.

---

[2] Doc. No. 14. The Court later issued two amended Scheduling Orders that ultimately extended the deadline for completion of fact discovery until June 16, 2017, and the deadline for dispositive motions until September 15, 2017. Doc. Nos. 20, 21. Neither Order contemplated further amendments to the complaint.

### B. The Parties' Discovery Dispute

Before the amended complaint was filed, Defendant served interrogatories on Plaintiff seeking information about the parties' alleged oral agreement, including the date it was formed and the individuals who negotiated its terms.[3] In Plaintiff's responses, served on October 11, 2016, Plaintiff stated that the agreement was reached during a January 8, 2013 telephone conference involving Jeremy Lindsey, a former employee of Defendant, and Greg Ford and Michael Reilly, both current employees of Plaintiff.[4] Plaintiff's responses were sworn under penalty of perjury by Plaintiff's general counsel.

In April 2017, late in the discovery period, Plaintiff inadvertently produced an email from Mr. Ford (the "Ford email") that was dated October 5, 2016, and called into doubt the veracity of Plaintiff's interrogatory responses. In the email, entitled "RE: Discovery Responses – client attorney privilege," Mr. Ford informed Plaintiff's outside counsel that "there were *no specific discussions* surrounding state rate[s]" on the January 8 call during which the agreement to pay state rates was allegedly formed.[5] After Plaintiff produced the Ford email, Defendant's counsel informed Plaintiff's counsel by letter that Defendant believed Plaintiff's claims were meritless, that Plaintiff's interrogatory responses were false, and that Defendant would seek relief from the Court unless Plaintiff withdrew its claims.

Plaintiff responded that the Ford email was privileged and had been inadvertently produced, and demanded that Defendant return the email. Defendant then filed a motion seeking a determination that the Ford email was not privileged. The Court held a hearing on the motion on June 13, 2017, and following the hearing, the parties agreed that Plaintiff would file a motion

---

[3] Doc. No. 22-12 (Defendant's First Set of Consolidated Discovery Requests).

[4] Doc. No. 22-5 (Plaintiff's Responses to Defendant's Interrogatories).

[5] Doc. No. 22-6 at 6 (emphasis added).

seeking leave to amend the complaint in light of the Ford email, to which Defendant would respond.[6] Plaintiff now seeks leave to file a second amended complaint that omits any reference to an "express" agreement and instead asserts, for the first time, that the agreement to pay state rates was implied from the parties' course of performance following the January 8, 2013 call.[7] Defendant opposes the motion and has moved for sanctions pursuant to Federal Rule of Civil Procedure 26(g) and 28 U.S.C. § 1927.

## II. LEGAL STANDARD

Typically, a court's decision to grant leave to amend begins and ends with Federal Rule of Civil Procedure 15. Under Rule 15, leave to amend should be "freely give[n] when justice so requires," and denial "is justified only on the grounds of bad faith, undue delay, prejudice, or futility."[8]

"By contrast, where a party seeks to amend its pleadings after a deadline set by court order, the decision whether to allow the amendment is controlled by Rule 16(b)."[9] "Under Rule 16(b), the party seeking the amendment is effectively asking the court not only for leave to amend its pleadings, but also the scheduling order. Because the party's request now implicates the effective administration of justice, the party must show good cause in order to procure the court's consent."[10] "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking

---

[6] The issue of whether the Ford email is privileged has been mooted by the fact that Mr. Ford has signed a declaration attesting to the facts in the email. *See* Doc. No. 36 (Plaintiff's Reply in Support of Motion for Leave to File a Second Amended Complaint), Ex. B (Declaration of Gregory Ford).

[7] *See* Proposed Second Amended Complaint ¶¶ 7-11, 14, 51-58.

[8] *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) (citation omitted).

[9] *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010) (footnote omitted).

[10] *Id.*; *see also Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (affirming district court's decision denying leave to amend for failure to comply with Rule 16's "good cause" standard); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (similar).

the modification of the scheduling order."[11]  "Thus, if the party was not diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to file a motion to amend its pleading."[12]

## III. ANALYSIS

### A. Plaintiff's Motion for Leave to Amend is Denied

#### 1. Plaintiff Has Not Shown Good Cause for Modifying the Court's Scheduling Order

As a threshold matter, because Plaintiff's motion was filed after the deadline set forth in the Court's Scheduling Order, the Court must determine whether Plaintiff has shown good cause for modifying the Court's Scheduling Order, an issue Plaintiff fails to address. Regardless, the record demonstrates a lack of good cause.

The basis of the proposed second amended complaint—that Defendant never expressly agreed to pay Plaintiff state rates—has been known to Plaintiff for months, if not longer. Indeed, Plaintiff could have determined what was discussed during the critical January 8 phone call before this case was filed. And what ultimately precipitated Plaintiff's request for leave to amend was not new information, but the inadvertent production of the Ford email, which was written two months before Plaintiff's deadline to file an amended complaint and more than eight months before Plaintiff filed the present motion. Plaintiff's inadvertent production of an email that undermines its claims does not establish good cause, and Plaintiff offers no other compelling justification for its delay.[13] Thus, Plaintiff's motion for leave to amend must be denied.

---

[11] *Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 198 (E.D. Pa. 2010) (citations omitted).

[12] *Price*, 737 F. Supp. 2d at 279 (citation and internal quotation marks omitted).

[13] *See Hildebrand*, 264 F.R.D. at 199 (concluding that plaintiffs failed to show good cause where they sought leave to amend eight months after the court-imposed deadline and failed to offer a "clear and cognizable justification" for the delay); *Price*, 737 F. Supp. 2d at 280 (denying leave to amend where plaintiff offered "no justification at all for the failure to seek leave to amend the Complaint prior to the Court-ordered deadline"); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 703 (E.D. Pa. 2007) (denying defendant's motion to amend answer where defendant

## 2. Leave to Amend Is Not Warranted Under Rule 15

Even assuming that Plaintiff could establish good cause, leave to amend would be denied under Rule 15 on the grounds of prejudice and undue delay.[14]

### a. Prejudice

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment."[15] "Prejudice means 'undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactics or theories on the part of the other party.'"[16] Relevant considerations include "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."[17]

Amendment would be prejudicial because it would force Defendant to litigate claims based on an implied-in-fact contract after nearly a year of discovery concerning claims based on an express agreement. These claims are not merely different; they are mutually exclusive.[18] The difference between express and implied-in-fact contracts drove discovery, with Defendant's discovery requests focused on the relatively narrow time period (October 2012 through January 2013) during which the agreement was allegedly formed. Allowing Plaintiff to swap horses midstream (or really, on the opposite bank) and argue that the agreement was implied from the parties' conduct over a two-and-a-half year period would significantly broaden discovery at this late stage, delaying the resolution of this action and forcing Defendant to incur additional costs.

---

sought to do so five months after the court-imposed deadline and was aware of the facts underlying the proposed amendment at the outset of the case).

[14] Because the Court concludes that amendment is unjustified due to prejudice and delay, it need not reach Defendant's arguments that amendment would be futile.

[15] *Cummings v. City of Phila.*, No. 03-0034, 2004 WL 906259, at *3 (E.D. Pa. Apr. 26, 2004), *aff'd*, 137 F. App'x 504 (3d Cir. 2005) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993)).

[16] *Id.* (quoting *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969)).

[17] *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

[18] *Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004) (citations omitted).

The resulting prejudice justifies denying leave to amend, and all the more so because Plaintiff could have asserted its implied-in-fact contract claims in its first amended complaint, if not earlier.[19]

Plaintiff's attempts to downplay the prejudice Defendant would suffer are unpersuasive. Plaintiff asserts that the second amended complaint does not assert "new" causes of action because it still asserts claims for breach-of-contract and promissory estoppel. But the problem is not that Plaintiff is asserting "new" claims; it is that Plaintiff is shifting its claims in ways that contradict its previous pleadings.[20] Plaintiff also claims any additional discovery would be minimal, but defending against Plaintiff's implied-in-fact contract claims would require poring over thousands of invoices spanning a two-and-a-half year period.[21] Even if Defendant is not required to issue new discovery requests, Plaintiff's proposed amendments would still force Defendant to expend additional resources and prolong this dispute. That is sufficient to establish prejudice.[22]

---

[19] *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (affirming district court's decision to deny leave to amend where amendment "would inject new issues into the case requiring extensive discovery," and the basis for amendment was known months before leave was sought); *see also Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640-41 (E.D. Pa. 2009) (denying plaintiff's request to file a second amended complaint where plaintiff sought "a 'do-over' to assert new legal theories and permutations of its prior claims that it could have asserted much earlier").

[20] *See Coletta v. Ocwen Fin. Corp.*, No. 14-6745, 2015 WL 5584663, at *2 (E.D. Pa. Sept. 21, 2015) (denying leave to amend where plaintiff "could only correct [the complaint's] deficiency by contradicting that to which he has already sworn") (citing *Gasoline Sales, Inc. v. Aero Cales Company*, 39 F.3d 70, 74 (3d Cir. 1994)). In general, contradictions between an original pleading and an amended pleading are not sufficient to warrant denial of leave to amend. *E.g.*, *Schomburg v. Dow Jones & Co.*, 504 F. App'x 100, 104 (3d Cir. 2012). But Plaintiff does not merely seek to remedy minor factual inadequacies or pleading defects. Instead, Plaintiff seeks to abandon a legal theory that it has pursued for more than a year because information that was available to Plaintiff all along has shown that this theory is unsupported by the evidence. Under these circumstances, leave to amend is not warranted. *See CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 631 (3d Cir. 2013) (explaining that the Federal Rules "give district courts discretion to deny a motion in order to forestall strategies that are contrary to both the general spirit of the federal rules and the liberal amendment policy of Rule 15(a)") (citation and internal quotation marks omitted).

[21] *See* June 13, 2017 Hearing Tr. at 25:5-12 (Plaintiff's counsel stating that "[a]fter that agreement was reached, there were 4,160 payments for records at the state rate" and that "[p]rior to that, there were 27,025 requests for a total of $3 million from the date of the phone call").

[22] *E.g.*, *Heraeus Med. GmbH v. Esschem, Inc.*, No. 14-5169, 2017 WL 2439554, at *2 (E.D. Pa. June 6, 2017) (denying leave to amend where only one month remained in discovery schedule because doing so would cause

### b. Undue Delay

The Court also cannot ignore Plaintiff's delay in seeking leave to amend. "In evaluating undue delay, courts balance the reasons for not amending sooner against the burden of delay on the Court."[23] "'In particular, a district court may deny leave to amend a pleading where the moving party has: (1) failed to utilize previous opportunities to amend; and (2) has not offered any explanation for this failure.'"[24]

Plaintiff was previously granted leave to amend the complaint two months after the Ford email was written and nearly four months after discovery had begun. Instead of using this opportunity to assert claims based on an implied-in-fact contract, Plaintiff doubled down on its express-contract theory by adding a claim for promissory estoppel, and then waited more than six months before again seeking leave to amend. Under these circumstances, Plaintiff's delay can only be described as undue.[25]

Plaintiff's justifications for its delay are not convincing. Plaintiff notes that courts often grant leave to amend even at more advanced stages of litigation, but this ignores that the delay here was needless and brought about by Plaintiff's own strategic decisions.[26] Plaintiff also claims that its request for amendment was not dilatory because it followed shortly after the

---

prejudice and delay resolution of the case); *see also Amerisourcebergen Drug Corp. v. Am. Assoc. Druggists, Inc.*, No. 05-5927, 2007 WL 1463062, at *3 (E.D. Pa. May 18, 2007) (denying leave to amend to add new claims due to prejudice where new claims would necessitate additional discovery and prolong resolution of the case).

[23] *Heraeus*, 2017 WL 2439554, at *3 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)).

[24] *Id.* (quoting *AMS Constr. Co. v. Reliance Ins. Co.*, No. 04-02097, 2006 WL 1967336, at *2 (E.D. Pa. July 12, 2006)).

[25] *See Hildebrand*, 264 F.R.D. at 199 ("Certainly, failing to seek an amendment until eight months after the Court-imposed deadline had passed—despite long-term knowledge of the information supposedly requiring amendment—constitutes undue delay.").

[26] Plaintiff relies heavily on *Jackson v. Lehigh Valley Physicians Group*, No. 08-3043, 2010 WL 3855274 (E.D. Pa. Sept. 29, 2010), but that case is inapposite. In *Jackson*, the plaintiff was granted leave to amend the complaint shortly before trial to include claims for punitive damages because her attorney had inadvertently failed to include such claims in earlier pleadings and because the defendant was unable to identify any prejudice it would suffer as a result. *Id.* at *2. Unlike *Jackson*, Plaintiff's belated request for leave to amend does not appear to be the result of a mere lapse of judgment, and amendment would result in substantial prejudice to Defendant.

hearing regarding the Ford email. This argument is specious—that Plaintiff sought leave to amend after inadvertently revealing that its interrogatory responses were inaccurate speaks more to a desperate effort to salvage its claims than to diligence. Similarly, Plaintiff's argument that its delay stemmed from "misunderstandings and good faith lapses in judgment" is not credible.[27] Having decided to pursue express-contract claims in the face of evidence to the contrary from its own witness, Plaintiff must live with the consequences. Leave to amend is denied.

### B. The Court Will Defer Ruling on Defendant's Motion for Sanctions

Defendant argues that sanctions are warranted under Federal Rule of Civil Procedure 26 and 28 U.S.C. § 1927 because Plaintiff provided false interrogatory responses and knowingly pursued baseless claims. Because it is unclear how the parties intend to proceed in light of the Court's denial of Plaintiff's motion for leave to amend, the Court will defer ruling on Defendant's motion for sanctions pending a joint status report.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint is denied. An appropriate Order will be entered.

---

[27] Doc. No. 29 (Plaintiff's Motion for Leave to File a Second Amended Complaint) at 11 n.1.