# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MRO CORPORATION,<br>            *Plaintiff,*<br>    v.<br>HUMANA INC.,<br>            *Defendant.* | CIVIL ACTION NO. 16-2881 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                             **June 5, 2019**

Plaintiff MRO Corporation filed suit against Defendant Humana Inc., asserting claims of promissory estoppel and unjust enrichment stemming from a continuing dispute over whether Humana appropriately reimbursed MRO for delivering copies of medical records to Humana.[1] MRO has moved for partial summary judgment to preclude Humana from asserting its fourteenth affirmative defense that the rates Humana paid were legally permissible,[2] and Humana has moved for summary judgment on both of MRO's claims. Upon consideration of the parties' motions for summary judgment, and the responses thereto, the motions will be denied for the following reasons.

## I.     BACKGROUND

Humana is a healthcare insurance company that routinely requests copies of medical records from healthcare providers to audit post-payment claims for treatment of the healthcare

---

[1] Although the operative Amended Complaint also alleges a breach of contract claim against Humana, MRO provided in a joint status report on August 31, 2017, that it "does not intend to move forward on its breach-of-contract claim (Count I)." Joint Status Report [Doc. No. 46] at 1.

[2] MRO also moved to preclude Humana from asserting its sixteenth affirmative defense that the rate at which Humana pays for copies of medical records is prescribed by federal law, but Humana responded that it will withdraw this defense. Humana Inc.'s Resp. in Opp'n to MRO's Mot. for Partial Summ. J. [Doc. No. 80] at 1. Thus, the Court will dismiss as moot MRO's motion as it relates to Humana's sixteenth affirmative defense.

providers' members that use Humana's insurance plans. In addition to traditional health care plans, Humana contracts with the Centers for Medicare and Medicaid Services ("CMS") to provide Medicare Advantage plans as an alternative to traditional Medicare coverage.[3] In response to requests for copies of medical records, some healthcare providers send them to Humana directly, while others contract with release of information ("ROI") providers, such as MRO, to send those records.

When MRO contracts with healthcare providers to assist them in copying and delivering medical records to the persons or entities that request those records from the healthcare providers, it generally is paid by the requesters of the records, not the healthcare providers. Although Humana and MRO have no formal contractual relationship, the parties do not dispute that when MRO sends copies of medical records to Humana, Humana reimburses MRO for the copies.

Most states have enacted statutes and regulations that address requirements and limitations regarding the payment for obtaining copies of medical records.[4] For each state in which MRO operates, it has adopted a rate schedule based on the state rate provisions, or if none, what it has determined to be a reasonable rate (the "State Rate"). MRO's position is that "[o]ne of the norms of the industry is that Requesters will pay the 'state rate' for medical records in the state the health care provider is located in."[5]

From 2010 to 2012, MRO routinely and primarily pre-billed its State Rate to Humana for record requests and was paid the invoiced amount by Humana. In 2012, after disputes arose over

---

[3] MRO's Mot. for Partial Summ. J., Stephen Hynes Aff., Ex. A [Doc. No. 76-1] at ¶ 9.

[4] Humana, however, contests whether some of the state statutes apply to it as an insurance company. Humana Inc.'s Mot. for Final Summ. J. [Doc. No. 77-1] at 20.

[5] MRO's Mot. for Partial Summ. J. [Doc. No. 76] at 4.

Humana's failure to pay invoices in advance of the receipt of the records, a telephone conference was held on January 8, 2013, between employees of MRO and Humana. Although the conversation was not memorialized in writing,[6] and there were no specific discussions about continuing to pay State Rates,[7] the result of the call was that MRO would eliminate the pre-bill requirement and Humana would pay the outstanding invoices and future invoices.

In May 2015, Humana sent a notice of its new reimbursement payment policy (the "Policy") to all of its healthcare providers and gave a copy to MRO, stating that:

> Payment for copying fees shall be made at:
> a. The rate explicitly outlined in the physicians or other health care provider's contract, or
> b. The Centers for Medicare & Medicaid Services' (CMS) rate of 12 cents per page or up to $25 maximum per record, or
> c. In the case of commercial claims, the rate outlined in the state statute.
> . . . Humana does **not** prepay for records, and reimbursement is made once record requests are fulfilled.[8]

Beginning in July 2015, Humana stopped paying MRO its requested invoice amount for medical records, and started applying the CMS rate for many of the record requests fulfilled by MRO.[9] Humana asserts that the vast majority of the invoices at issue were for requests related to Medicare Advantage plans administered by Humana, which are regulated by CMS.[10] Because there was no contract between Humana and MRO, Humana contends that the CMS rate of 12 cents per page or up to $25 maximum per record as the basis for medical record reimbursement

---

[6] Humana's Resp. in Opp'n to Mot. for Leave to File Second Am. Compl., Pl.'s Resps. to Def.'s Interrogs., Ex. B [Doc. No. 32-3] at 3.

[7] MRO's Reply to Resp. to Mot. for Leave to File Second Am. Compl., Gregory Ford Decl., Ex. B [Doc. No. 36] at ¶ 5.

[8] MRO's Mot. for Partial Summ. J., Provider Payment Integrity Policy for Medical Records Management, Ex. E [Doc. No. 76-5] at 2.

[9] MRO's Mot. for Partial Summ. J., Stephen Hynes Aff., Ex. A [Doc. No. 76-1] at ¶ 13.

[10] Humana Inc.'s Mot. for Final Summ. J., Meghan Greeley Aff., Ex. A [Doc. No. 77-2] at ¶ 6.

for Medicare Advantage plans applies.[11] MRO contends that the State Rate, which Humana had always paid before, is the appropriate one.[12]

## II.     LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[13] A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[15] A dispute is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[16]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[17] Further, a court may not weigh the evidence or make credibility determinations.[18] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[19] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20] Therefore, if, after making all

---

[11] *Id.*

[12] MRO's Resp. in Opp'n to Humana Inc.'s Mot. for Summ. J. [Doc. No. 79] at 1-2.

[13] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[14] Fed. R. Civ. P. 56(a).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Id.*

[17] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[18] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1988).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[20] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[21]

### III. DISCUSSION

#### A. MRO's Motion for Partial Summary Judgment to Preclude Humana's Fourteenth Affirmative Defense[22]

MRO argues that Humana's fourteenth affirmative defense—that the rates it pays are "legally permissible"—is unsupported as a matter of law and should be stricken.

The evidence in the record shows that CMS explicitly permits two types of entities to reimburse at the CMS rate—Quality Improvement Organizations ("QIO") and Recovery Audit Contractors ("RAC"). CMS contracts with QIOs to perform reviews of certain Medicare service providers,[23] and contracts with RACs for the purpose of reviewing claims and identifying Medicare underpayments and overpayments and recouping overpayments made to healthcare providers.[24] QIOs are entitled to the CMS rate under federal regulations,[25] and on March 26,

---

[21] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[22] As an initial matter, courts have differed over the last decades in terms of whether a motion for summary judgment is an appropriate procedure by which to challenge an affirmative defense, as opposed to solely through a motion to strike under Rule 12(f). *Kantner v. Sears & Roebuck, Inc.*, No. 15-1039, 2016 WL 739187, at *2 (E.D. Pa. Feb. 25, 2016) (citation omitted). Courts that have expressed allowance of a challenge to an affirmative defense under Rule 56 have based their reasons on discovery closing and the parties referring to matters outside of the pleadings, since the motion more squarely complies with the Rule 56 standards. *See Fed. Deposit Ins. Corp. v. Musser*, No. 12-7231, 2017 WL 878208, at *3 n.3 (E.D. Pa. Mar. 6, 2017) ("[T]he standards of Rule 56 contemplate a developed evidentiary record. . . . After the close of discovery, the [plaintiff] may, if it so chooses, move for summary judgment on any remaining affirmative defenses."); *N.J. Mfrs. Ins. Co. v. Brady*, No. 15-2236, 2017 WL 264457, at *4 (M.D. Pa. Jan. 20, 2017) ("Here, because both parties refer to matters outside of the pleadings, it is appropriate for the Court to treat [plaintiff's] Motion as one for partial summary judgment rather than a motion to strike." (citing *United States v. Manzo*, 182 F. Supp. 2d 385, 395 n.6 (D.N.J. 2000))). Here, because discovery has closed in this case and both parties have referred to matters beyond the scope of the pleadings for purposes of MRO's motion, the Court will review MRO's motion under a Rule 56 standard, where "[t]he effect of a grant of partial summary judgment . . . is that the affirmative defense[] [is] stricken." *Kantner*, 2016 WL 739187 at *2.

[23] 42 C.F.R. § 476.71.

[24] 42 U.S.C. § 1395ddd(h).

[25] 42 C.F.R. § 476.78(c); 68 Fed. Reg. 67955-01.

5

2012, CMS issued an update on its website stating that RACs are entitled to the CMS rate, effective April 1, 2012.[26]

Although it is undisputed that Humana is neither a QIO nor an RAC,[27] this does not necessarily prohibit it from legally being able to utilize the CMS rate for its plans, such as Medicare Advantage. MRO has not established as a matter of law that Humana is barred from using the CMS rate in its Policy,[28] or whether the rates would be understood to apply to Medicare Advantage plans—an issue that may ultimately affect the outcome of the suit.[29] Thus, summary judgment on Humana's fourteenth affirmative defense will be denied, and this defense will not be stricken at this time.

### B. Humana's Motion for Summary Judgment

#### 1. Promissory Estoppel Claim

Under Pennsylvania law, promissory estoppel is an "equitable remedy to a contract dispute . . . [which] makes otherwise unenforceable agreements binding."[30] A plaintiff must prove that: "(1) the promisor made a promise that he should have reasonably expected to induce

---

[26] MRO's Mot. for Partial Summ. J., CMS Recent Updates, Ex. G [Doc. No. 76-7] at 2.

[27] MRO's Mot. for Partial Summ. J., Meghan Greeley Dep., Ex. B [Doc. No. 76-2] at 31 ("Humana is not a [*sic*] RAC or QIO . . . .").

[28] MRO's motion primarily distinguishes Humana from QIOs and RACs by arguing that QIOs and RACs are "government contractors" performing work on behalf of the federal government when they audit traditional Medicare plans, while Humana audits its plans solely for "a commercial," for-profit purpose. MRO's Mot. for Partial Summ. J. [Doc. No. 76] at 12-15. Humana counters that QIOs, RACs, and Humana nonetheless all perform similar functions in conducting post-payment audits on medical claims "to root out fraud, waste, and abuse," a standard that Humana is required to comply with under CMS regulations for its Medicare Advantage plans. Humana Inc.'s Resp. in Opp'n to MRO's Mot. for Partial Summ. J. [Doc. No. 80] at 7-8 (citing 42 C.F.R. § 422.503(b)(4)(vi)(C)). Humana therefore asserts that its decision to apply the CMS rate for the copies of medical records for post-payment auditing was based on a "reasonable value," and thus was legally permissible. *Id.* at 8.

[29] *See Anderson*, 477 U.S. at 248 ("[D]isputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment.").

[30] *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000); *see also Constar, Inc v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 323 (E.D. Pa. 2000) ("Promissory estoppel is applied to enforce a promise which is not supported by consideration, in other words, where there is no binding contract." (citing *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990))).

6

action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."[31] There must be an *express* promise between the promisor and the promisee; a "broad or vague implied promise" will be deemed insufficient.[32] To qualify as an express promise, courts have held that the promise must indicate with "reasonable certainty" the intent of the parties.[33]

Humana argues that it is entitled to summary judgment on MRO's promissory estoppel claim because MRO has not shown that Humana provided any express promise to reimburse MRO at State Rates for copies of medical records. MRO concedes that "there were no specific discussions surrounding [S]tate [R]ate[s]" during the January 8, 2013 telephone call between MRO and Humana.[34] Yet, Humana may have made an express promise to pay State Rates in its May 2015 Policy, which provided that "[i]n the case of commercial claims," payment for copying fees would be made at "the rate outlined in the state statute."[35] The Policy itself does not define "commercial claims," and based on the current record, the Court cannot determine as a matter of law whether requests for records related to Humana's Medicare Advantage claims are commercial claims payable at the State Rates, or whether the CMS rate reasonably could be

---

[31] *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citing *Crouse*, 745 A.2d at 610).

[32] *See C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if . . . detrimental reliance [was] based on the alleged existence of [] a broad and vague implied promise." (citation omitted)); *Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000) ("An implied promise is insufficient to support a claim for promissory estoppel.").

[33] *Ankerstjerne v. Schlumberger Ltd.*, No. 03-3607, 2004 WL 1068806, at *5 (E.D. Pa. May 12, 2004), *aff'd*, 155 F. App'x 48 (3d Cir. 2005).

[34] MRO's Reply to Resp. to Mot. for Leave to File Second Am. Compl., Gregory Ford Decl., Ex. B [Doc. No. 36] at ¶ 5.

[35] MRO's Mot. for Partial Summ. J., Provider Payment Integrity Policy for Medical Records Management, Ex. E [Doc. No. 76-5] at 2.

7

understood to apply in such circumstances. Industry practices explained through witnesses and possibly expert testimony would assist in decoding the language of this Policy in order to understand the significance of what promises Humana made in the Policy. Humana's motion for summary judgment on the promissory estoppel claim against it therefore will be denied.[36]

## 2. Unjust Enrichment Claim

Unjust enrichment is essentially an equitable doctrine which arises from a quasi-contract.[37] To establish a claim for unjust enrichment in Pennsylvania, a plaintiff must prove: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff."[38] The most significant element is whether the enrichment of the defendant is "unjust,"[39] which requires that the plaintiff show that the defendant "'either wrongfully secured or passively

---

[36] Instead of contending that the Policy created an express promise in its responses and replies to Humana's motion for summary judgment on the promissory estoppel claim, MRO primarily focuses its attention on the prior conduct between Humana and MRO as establishing an express promise. MRO argues that express promises may be in the form of "misleading words, conduct or silence." MRO's Resp. in Opp'n to Humana Inc.'s Mot. for Summ. J. [Doc. No. 79] at 8 (citing *Luther v. Kia Motors Am., Inc.*, 676 F. Supp. 2d 408, 421 (W.D. Pa. 2009)). Although some district courts in this Circuit have held that "misleading words, conduct or silence" is required to prove promissory estoppel, this element appears to stem from *equitable* estoppel; unlike promissory estoppel, equitable estoppel is not a separate cause of action, but rather is a defense used to preclude a person from denying or asserting a claim. *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990); *Paul v. Lankenau Hosp.*, 543 A.2d 1148, 1152 (Pa. Super. Ct. 1988); *see also Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 156 (3d Cir. 2010) (providing that the elements for equitable estoppel under Pennsylvania law are: "'1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel'" (quoting *Chester Extended Care Ctr. v. Pa. Dep't of Pub. Welfare*, 586 A.2d 379, 382 (Pa. 1991))). Nevertheless, while this Court does not find under the particular circumstances that the previous conduct as to payments constituted anything more than an implied promise by itself, this conduct may be useful in clarifying the language of the Policy to determine whether Humana made an express promise.

[37] *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916–17 (Pa. Super. Ct. 2017) (citing *Styer v. Hugo*, 619 A.2d 347 (Pa. Super. Ct. 1993)).

[38] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citations omitted).

[39] *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001).

8

received a benefit that . . . would be unconscionable for [it] to retain.'"[40] Damages are measured by the reasonable value of the services rendered.[41]

Humana first contends that it is a third party that benefits from the contracts between MRO and healthcare providers, and that because it neither directly requested the benefit from MRO nor misled MRO into performing, no benefit was conferred on Humana.[42] Humana's argument, however, ignores the working relationship and industry practice between ROI providers, who assist healthcare providers in copying and delivering medical records to those who request them, and the requesters, who generally pay fees for those services. This relationship involves more than simply a defendant being a third-party beneficiary to a contract, as Humana and MRO have been involved in direct dealings,[43] notwithstanding the absence of a formal contract. Unjust enrichment is intended to apply to this type of relationship where no written agreement or express contract is found.[44]

Humana also asserts that summary judgment should be granted in its favor because it paid MRO for the copies of the medical records at issue, and there is no evidence that Humana's payment was not equal to a reasonable value for the records.[45] First, its argument that it

---

[40] *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)); *see also Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501, 515 (Pa. Super. Ct. 2003) ("In other words, the defendant makes restitution to the plaintiff in *quantum meruit*." (citation omitted)).

[41] *Pulli v. Warren Nat'l Bank*, 412 A.2d 464, 465 (Pa. 1979); *see also Temple Univ. Hosp., Inc.*, 832 A.2d at 508 ("[W]hen unjust enrichment is present, the law implies the existence of a contract requiring the defendant to pay to the plaintiff the reasonable value of the benefit conferred.").

[42] Humana Inc.'s Mot. for Final Summ. J. [Doc. No. 77-1] at 11-12 (citing *iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017); *D.A. Hill Co. v. CleveTrust Realty Inv'rs*, 573 A.2d 1005, 1010 (Pa. 1990)).

[43] *See, e.g.*, MRO's Mot. for Partial Summ. J., Provider Payment Integrity Policy for Medical Records Management, Ex. E [Doc. No. 76-5].

[44] *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citations omitted).

[45] Humana Inc.'s Mot. for Final Summ. J. [Doc. No. 77-1] at 12.

provided some payment to MRO is at odds with the equitable nature of unjust enrichment; some payment to a plaintiff for the benefit conferred does not eradicate whether it is nonetheless "unjust."[46] Moreover, there is competing evidence in the record as to what is considered a reasonable value for MRO's services based on industry practices and previous transactions.[47] Because Pennsylvania courts have held that "[r]easonable value is what someone normally receives for a given service in the ordinary course of its business from the community that it serves,"[48] a question which usually involves a fact-intensive inquiry for a jury,[49] summary judgment on MRO's unjust enrichment claim will be denied.

## IV. CONCLUSION

For the foregoing reasons, MRO's motion for partial summary judgment and Humana's motion for summary judgment will be denied. An appropriate order follows.

---

[46] *See, e.g.*, *Temple Univ. Hosp., Inc.*, 832 A.2d at 507–08 (holding that without assessing the "reasonable value for the services rendered," defendants could then "pay a fraction of the value of the benefit . . . and successfully argue that the doctrine of unjust enrichment was not applicable").

[47] For instance, MRO provides expert reports with affidavits, stating that the cost of performing its services exceeds the CMS rate. MRO's Reply Br. in Supp. of Mot. for Partial Summ. J., Expert Report by Jan McDavid, Ex. B [Doc. No. 81-2] at 3; MRO's Reply Br. in Supp. of Mot. for Partial Summ. J., Jan McDavid Aff., Ex. B-1 [Doc. No. 81-2]. Meanwhile, Humana has provided evidence that it pays the CMS rate or lower for copies of records, and that during the relevant time period, one of MRO's direct competitors charged Humana the CMS rate or lower for copies of medical records. Humana Inc.'s Resp. in Opp'n to MRO's Mot. for Partial Summ. J., Meghan Greeley Aff., Ex. A [Doc. No. 80-1] at ¶ 5.

[48] *Temple Univ. Hosp., Inc.*, 832 A.2d at 510.

[49] *See Caring People All. v. Educ. Data Sys., Inc.*, No. 07-1267, 2008 WL 4441994, at *10 (E.D. Pa. Sept. 29, 2008) ("Whether [defendant's payment for services] amounts to reasonable value is a question of fact for the jury."); *Dastgheib v. Genentech, Inc.*, No. 04-1283, 2006 WL 120052, at **8 (E.D. Pa. Jan. 13, 2006) ("The amount of restitution to which plaintiff is entitled [for an unjust enrichment claim] . . . is ultimately a question of fact for a jury to decide. Thus, summary judgment will be denied on this basis.").